# Vilsock *v.* Youghiogheny and Ohio Coal Company, Appellant.

*Negligence—Master and servant—Safe and unsafe method of service—Mining — Moving electric motor cars — Damnum absque injuria—Assumption of risk.*

1. Where two ways of discharging a service are apparent to an employee, one dangerous and the other safe or reasonably so, the employee must select the latter whether or not it is the less con-

venient to him; if he chooses the former and the danger is such that a reasonably prudent man would not incur the risk under the same circumstances he is guilty of such negligence as will bar a recovery although the master may also have been negligent.

2. In an action by an eighteen-year-old plaintiff against his employer, a coal mining corporation, to recover damages for personal injuries, a verdict and judgment for plaintiff cannot be sustained, where it appears that plaintiff's foot came in contact with a lump of coal beside the track while he was attempting to jump upon the brake rod at the side of a moving electric motor; that the plaintiff was familiar with the operation of such motors and with his duties as brakeman thereof; that riding on the side of the moving motor was no necessary part of such duties and was manifestly dangerous.

3. The mere fact that the presence of the lump of coal beside the track contributed to the accident is not enough to convict defendant of actionable negligence, where plaintiff had full notice of its presence.

4. In such case it is immaterial that the plaintiff may have complained to his superiors of the presence of the lump of coal and that the latter had promised to remove it, since the accident was ascribable to the plaintiff's failure to go about the performance of his duties in the safe and efficient method that the circumstances afforded.

Argued Oct. 24, 1916.    Appeals, Nos. 183 and 184, Oct. T., 1916, by defendant, from judgments of C. P. Allegheny Co., Oct. T., 1915, No. 1683, on verdicts for plaintiffs in case of John Vilsock, Jr., a Minor, by his Father and Next Friend John Vilsock, Sr., and John Vilsock, Sr., v. Youghiogheny and Ohio Coal Company.    Before BROWN, C. J., MESTREZAT, POTTER, FRAZER and WALLING, JJ.    Reversed.

Trespass to recover damages for personal injuries and for the loss of services of a minor.    Before FORD, J.

The facts appear by the opinion of the Supreme Court.

The court's rulings upon defendant's points for charge were as follows:

"1. Under all the pleadings in the case your verdict must be for the defendant."

Answer: "Refused; not read."    (1)

"2. The evidence discloses no negligence on the part of the defendant and your verdict must be for defendant."

Answer: "Refused; not read." (2).

"3. The plaintiff John Vilsock, the minor, did not require instructions as he was familiar with the duties of his employment and was aware of the dangers incident thereto."

Answer: "Refused; not read." (3)

Verdict for plaintiffs, John Vilsock, Sr., $1,847.90; and John Vilsock, Jr., $10,000, and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were (1-3) answers to defendant's points.

*B. J. Jarrett,* with him *Willis F. McCook,* for appellant, cited: Booth et al. v. Stokes, 241 Pa. 349; Walsh v. Penna. Coal Co., 231 Pa. 518; Long v. Folwell Bros. & Co., 228 Pa. 314; Shields v. Merchants' & Miners' Transportation Co., 230 Pa. 624; Dugan v. Susquehanna Coal Co., 241 Pa. 565; Fritchle v. Steel City Electric Co., 251 Pa. 513.

*Elder W. Marshall,* with him *Meredith R. Marshall,* for appellees, cited, as to the negligence of the defendant: Welsh v. Butz, 202 Pa. 59; Zeskie v. Penna. Coal Co., 241 Pa. 183; Smith v. Hillside Coal & Iron Co., 186 Pa. 28; Burns v. Vesta Coal Co., 223 Pa. 473; Stewart v. Central R. R. Co. of N. J., 235 Pa. 311; Schliglizzo v. Dunn, 211 Pa. 253; Glew v. Pittsburgh Rys. Co., 234 Pa. 238; Glass v. College Hill Boro., 233 Pa. 457; Meade v. Pittsburgh Rys. Co., 223 Pa. 145; Maines v. Harbison-Walker Co., 213 Pa. 145; Webster v. Monongahela River Consolidated Coal & Coke Co., 201 Pa. 278; Foster v. National Steel Co., 216 Pa. 279; Hollis v. Widener, 221 Pa. 72; Pfeifer v. Allegheny Steel Co., 243 Pa. 256.

OPINION BY MR. JUSTICE POTTER, January 8, 1917.

This was an action of trespass brought in behalf of John Vilsock, Jr., by his father and next friend, John Vilsock, Sr., and by the latter in his own right, to recover damages for injuries resulting from the alleged negligence of the defendant. It appears from the evidence that John Vilsock, Jr., was between eighteen and nineteen years of age when he received the injuries for which recovery is here sought, and that he had then been employed by the defendant for some three years, and was familiar with the operation of electric motors used in hauling coal from the mines, and that for a time he was in charge of such a motor. During a period of about six months prior to the accident in question, he was employed as a brakeman or "snapper" in connection with an electric motor used for hauling loaded coal cars out of defendant's mine. The motor was built in the form of a low four wheeled flat car, with a steel cased body. At one end of the car was a seat for the motorman, and at the other was a hand rail for the use of the brakeman in getting on or off the motor. No provision was made for getting on at the side of the machine, and it was manifestly dangerous to attempt to mount at the side when the car was in motion. The side wheels were about three feet apart, and between them on each side, arranged to work against each wheel, were brake shoes, connected by a short horizontal brake rod, located about eight inches above the track. After the coal cars were loaded in the mine, they were drawn by the motor over a main track towards a "tipple" which consisted of an inclined plane, up which the cars were drawn to be emptied. As the motor approached the tipple it was disconnected from the loaded cars by the brakeman,and was switched upon a siding. The switch was then closed and the cars were allowed to run ahead on the main track towards the tipple. It was the duty of Vilsock, Jr., as brakeman, to aid in stopping the cars after they had passed the switch. It appears that in the regular course

of the operation, after dropping the loaded cars, the motor was taken back a short distance towards the mine, and switched to another track upon which empty cars were standing, waiting to be taken into the mine. The brakeman aided in coupling these cars together and in coupling them to the motor. The exact distance which the motor had to run from switch to switch upon the cross-over track does not clearly appear from the evidence, but it was not more than three hundred feet. Plaintiff's witness, Hensberger, a motorman, testified that the snapper "would be up at the pit mouth most of the time waiting for me, or somewhere around there about the center of the track." The testimony showed that when the brakeman was at that point, he threw the switch near the pit mouth. If the brakeman was not there, the motorman attended to that duty. It appears that Vilsock was in the habit of jumping upon the side of the moving motor, with his foot upon the brake rod, riding in that position, the short distance to the switch near the pit mouth. At the time of his injury, he jumped upon the side of the moving motor, and, according to his story, he succeeded in getting his right foot on the rod, but at that moment he said his left foot struck against a lump of coal lying near the track, and the blow knocked that foot under the wheel, which crushed it, so that amputation was necessary. We can find nothing in the evidence which fairly justifies an inference that it was the duty of the brakeman to mount the moving motor from the side, and ride there, standing upon the brake rod. The rod was not intended for any such purpose, and the danger of such an attempt was apparent. There was danger of missing the rod, and failing to get a foothold. As the rod was round and smooth there was danger of slipping from it, and going under the wheel, and, as the rod was so near the ground, there was danger of striking an obstruction, which, as plaintiff says, is what actually did happen. He attempted to justify his action by the statement that when he began this particular line

of work, several months before, he was told to do the work as another snapper did, and, as he saw that brakeman riding upon the side of the car standing upon the rod, he inferred that he could do the same thing. The excuse was wholly insufficient, as the danger in this practice was manifest, and Vilsock was an experienced man familiar with the work and with the operation of the motors. The service, which was at the time committed to him, consisted in manipulating the brakes on the coal cars, and in coupling and uncoupling these cars, and in throwing a switch, all of which duties, with the exception of uncoupling the motor, were to be performed while he was standing upon the ground. The superintendent testified that the brakeman had no occasion to ride upon the motor, as his proper place was near the rear of the train, and that in going the short distance to the switch near the pit mouth he should have walked. He said that he warned Vilsock against the danger of attempting to ride upon the side of the motor. If, for any reason, he desired to get upon the motor, the proper place was at the rear end. There was positive testimony of the mine foreman, the machinist, the boss motorman, and other witnesses, that Vilsock was warned against the risk which he incurred in attempting to jump upon the side of the moving motor. His unsupported denial of these warnings would perhaps make that particular question one of fact for the jury. But there was nothing in the testimony to show that he lacked knowledge of the danger in such an attempt, or required any instruction to avoid it, nor did the evidence disclose anything which tended to excuse in any way his reckless disregard of that danger. It was certainly not necessary to warn him that, if he got his foot under a car wheel, he would be hurt, and his employment as a snapper for months prior to the accident must have given him a full understanding of the situation. The danger incident to jumping on the side of the moving motor was obvious, and the possible result of a misstep, or a slip of the foot from the brake

rod located so near the wheels, was one which a person of plaintiff's age and intelligence was bound to foresee.

It is further contended that plaintiff's injuries were directly caused by reason of his foot striking a lump of coal lying near the track, and that defendant was negligent in permitting the coal to remain there. But the lump of coal which caused the accident was in plain view and plaintiff admitted he saw it there when he got on the car, and he testified further that the same lump of coal was there two or three weeks before the accident. In view of this testimony he must be held to have voluntarily assumed the risk of coming in contact with it.

It is argued, however, that since plaintiff had complained to the foreman of the presence of the coal, and the latter had promised to remove it, plaintiff was justified in continuing his work and that he did so in reliance upon such promise. Had he been performing his duties in the only manner in which they could reasonably be performed, there would be some force in this argument. But there is no evidence that it was necessary for plaintiff, in the proper performance of his duties, to ride on the side of the moving motor. On the contrary, plaintiff could easily have walked the short distance to the siding switch, and, according to the testimony of one of his witnesses, the snapper often did so and was at the switch ahead of the motor and waiting for it. It thus appeared there was a safe and efficient method of doing the work, and plaintiff cannot be permitted to set up the alleged promise of defendant to remove the coal, as an excuse for continuing the dangerous practice of jumping upon the side of the motor and riding there. "Where two ways of discharging the service are apparent to an employee, one dangerous and the other safe or reasonably so, the employee must select the latter whether or not it is the less convenient to him; if he chooses the former and the danger is such that a reasonably prudent man would not incur the risk under the same circumstances, he is guilty of such negligence as will bar a recovery al-

though the master may also have been negligent":
Fritchle v. Steel City Elec. Co., 251 Pa. 513, 516.

Plaintiff unnecessarily put himself in a position which
he knew to be dangerous. The evidence clearly shows
that he brought his misfortune upon himself, by his reck-
less disregard of his own safety in mounting the moving
motor at the side, and in attempting to ride thereon while
it was operating under conditions with which the record
shows he was entirely familiar.

The first, second and third assignments of error are
sustained, and the judgments are reversed.